1
2
3
4
5
6

**THE DISTRICT COURT OF GUAM**

7

FRED J. CRUZ,

CIVIL CASE NO. 22-00002

8

Plaintiff,

9

vs.

10

PETER CRUZ,

11

Defendant.

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW AND ORDER
RE DEFENDANT'S MOTION FOR
JUDGMENT ON PARTIAL FINDINGS
PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 52(C)**

12

13

**I.  Introduction**

14

    This matter came before the court on February 13-16, 2024 for a bench trial. Mins., ECF

15

Nos. 105, 113, 118, and 119. Plaintiff Fred J. Cruz appeared *pro se*. Defendant Peter Cruz was not

16

present at trial and was represented by counsel, Ms. Geri E. Diaz and Mr. Nicholas J. Ennis of the

17

law firm Camacho Calvo Law Group LLC.

18

    The nature of the case concerns a contract dispute between two brothers, Fred and Peter.

19

The issue at trial was whether Peter breached a contract he entered with Fred. A total of three

20

witnesses testified. They are the Plaintiff Fred; Fred's assistant, Mary Quijano; and Peter's

21

daughter, Christina Wood.

22

    On February 21, 2024, Peter filed a Motion for Judgment on Partial Findings Pursuant to

23

Federal Rule of Civil Procedure 52(c) (the "Motion"). Def.'s Mot., ECF No. 120. Peter argues

24

Fred failed to prove that there was a breach of contract and that the court should accept Peter's

interpretation of the contract. *Id.* at 1. Fred filed his Opposition to the Motion on February 25, 2024. Pl.'s Opp'n, ECF No. 121. Peter filed his Reply to Fred's Opposition to the Motion on March 6, 2024. Def.'s Reply, ECF No. 122.

The court, having reviewed the pleadings, considered the evidence, oral and documentary, and relevant legal authorities, finds that a contract does not exist. Fred failed to establish an essential element of his breach of contract claim – that is, the existence of a contract. As such, the Motion for Judgment on Partial Findings Pursuant to Federal Rule of Civil Procedure 52(c) is **GRANTED**,[1] and the court dismisses Fred's claim for breach of contract. The court, however, finds that Fred is entitled to some recovery under the equitable remedy of quasi-contract.

## II. Jurisdiction

The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and specific personal jurisdiction over Peter pursuant to Guam's long arm statute. 7 GUAM CODE ANN. § 14109 (2005).

## III. Factual and Procedural Background

On May 19, 2014, Lagrimas Cruz Cruz ("Decedent") died. Def.'s Ex. AA at 2. She was the mother of Fred and Peter (collectively, the "parties"). *Id.* On August 29, 2014, Bertha Cruz Gordon, the parties' sister, filed a Petition for Probate of Holographic Will and Letters of Administration in the Superior Court of Guam for Decedent's estate. *Id.* at 1-2. Therein, Bertha provided the Last Will and Testament of Decedent. *Id.* at 2. The court admitted the will to probate and appointed Bertha as the Administratrix for the estate. *Id.* On August 6, 2015, Bertha filed a First and Final Account, Report of Administratrix, and Petition for Final Distribution. *Id.* The Petition for Final Distribution named Bertha as the sole heir of the estate. *Id.*

On October 14, 2015, Peter called Fred and asked him to look into the probate matter since

---

[1] The court need not reach the legal arguments by Peter on the motion because the court finds that no contract exists.

it appeared that their sister Bertha would get everything from the probate case. Immediately thereafter, Fred asked Mary to begin the search for a lawyer to oppose the Petition for Final Distribution.

On May 2, 2016, the parties filed an Opposition to Petition for Final Distribution in the Superior Court of Guam and argued that they were omitted heirs. *Id.* On July 29, 2016, the parties filed a Petition for Determination of Heirship and Entitlement to Distribution. *Id.* at 2-3. Therein, the parties requested a hearing before the probate court to determine which of the eleven heirs of the Decedent were entitled to any part of the estate. *Id.* at 3 and Def.'s Ex. C at 4-5.

Six months later, on November 30, 2016, Peter signed a contract prepared by Fred. Pl.'s Ex. 1. The contract was notarized. *Id*. The contract provided:

> I, Peter Raymond Cruz, hereby agree to pay Fred Jerry Cruz cash in the amount of 12% of my share of the estate of our mother Lagrimas Cruz Cruz upon the final dispensation of probate in my favor and my timely liquidation of that share. This 12% fee is freely given to compensate Fred for the legal fees, travel expenses, secretarial costs and other expenses which he paid out of pocket in order to pursue the court case leading to the dispensation of the estate to myself and the other heirs.

> It is understood that if for some reason the court does not decide in our favor and Peter does not get a share of the estate this contract is void.

*Id.*

On April 4, 2017, the Superior Court of Guam issued a Decision and Order on Petition for Determination of Heirship and held that the parties' request for determination of heirship was untimely and in contravention with the time requirements as set forth in 15 GUAM CODE ANN. § 3201, which are mandatory and not discretionary. Def.'s Ex. V at 6. On May 4, 2017, the parties filed a Motion to Reconsider the Decision and Order for Determination of Heirship and argued Fred could not comply with the mandatory time requirements because he did not receive timely notice of the probate matter. Def.'s Ex. Z at 3. That same day, the parties filed a Notice of Appeal

1   with the Supreme Court of Guam, appealing the Decision and Order for Determination of Heirship.

2   Def.'s Ex. AA at 3 and Def.'s Ex. W. On August 21, 2017, the Supreme Court of Guam stayed the

3   proceedings. Def.'s Ex. AA at 3. On February 2, 2018, the Supreme Court of Guam issued a limited

4   remand to the Superior Court of Guam to address the Motion to Reconsider. *Id.* Bertha filed an

5   Opposition to the Motion to Reconsider. *Id.*

6          On March 19, 2018, the Superior Court of Guam issued a Decision and Order and found

7   that reconsideration was proper because the initial notice had not been properly served on Fred.

8   *Id.* at 4. Thereafter, the probate matter proceeded to mediation. Def.'s Ex. GG. On December 12,

9   2019, Bertha filed a Petition for Final Distribution, and she waived any claims under the will and

10  requested that the estate be divided among the siblings as written in the Petition. Def.'s Ex. HH at

11  5. On January 16, 2020, the court issued the Decree of Final Distribution. Def.'s Ex. C. There were

12  seven parcels of land as part of the estate. *Id.* at 2-4. Bertha received Parcel 1, and Parcels 2-7 were

13  distributed among the remaining ten heirs equally, including Fred and Peter.[2] *Id.* at 6-8.

14         Fred filed an Amended Complaint on August 15, 2022 before this court. Am. Compl., ECF

15  No. 34. The basis of the Amended Complaint was that Peter breached the contract he had with

16  Fred. *Id.* at 4. The case proceeded to a bench trial, and after trial, Peter filed a Motion for Judgment

17  on Partial Findings Pursuant to Rule 52(c). *See* Mins., ECF Nos. 105, 113, 118, and 119; and Mot.,

18  ECF No. 120.

19

20

21

22

23

24

---

[2] In particular, Fred and Peter each received a one tenth share of the following: Parcel 2 with an estimated appraised value of $361,500; Parcel 3 with an estimated appraised value of $276,718; Parcel 4 with an estimated appraised value of $448,998; Parcel 5 with an estimated appraised value of $929,079; Parcel 6 with an estimated appraised value of $247,757; and Parcel 7 with an estimated appraised value of $663,520. Def.'s Ex. C at 7-8. Six of the parcels are under leaseholds. Def.'s Ex. E at 1-2 and Def.'s Ex. D at 2. The court ordered that the rent collected from the leaseholds be equally distributed among the ten heirs. Def.'s Ex. C at 9.

**IV. Legal Standard**

A motion for judgment on partial findings, under Federal Rule of Civil Procedure 52(c), can only be made during a bench trial. *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). Once a party has been fully heard on an issue, "the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 52(c). Rule 52(c) "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." Fed. R. Civ. P. 32(c) advisory committee's note to 1991 amendment.

When deciding a motion brought under Rule 52(c), the court is "not required to draw any inferences in favor of the non-moving party[.]" *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (quoting *Ritchie*, 451 F.3d at 1023). Rather, the court may use its own view of the evidence to make a finding. *Id.* The court may grant Peter's Motion if it becomes apparent that Fred has "failed to carry an essential burden of proof." *Price v. U.S. Navy*, 818 F. Supp. 1323, 1324 (S.D. Cal. 1992), *aff'd*, 39 F.3d 1011 (9th Cir. 1994).

**V. Discussion**

At trial, the parties argued over two different interpretations of the "12% fee" mentioned in the contract. Fred testified that under the contract, Peter owed him 12% of Peter's share of the inheritance. On the other hand, Peter's counsel argued that if a contract was formed then Peter only owes Fred for the money expended to pursue the probate matter and not 12% of Peter's share of his inheritance. However, a close review of the record demonstrates that the issue here is not how the contract should be interpreted. Instead, the threshold inquiry is whether an enforceable contract exists. The court finds that Fred failed to prove the existence of a contract. In particular, past consideration was offered in this case and thus no contract was formed.

1      **A. A Valid Contract was Not Formed**

2      "To establish a breach of contract, a plaintiff must prove (1) the existence of the contract,

3   (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and

4   (4) resulting damages to the plaintiff."[3] *Hemlani v. Hemlani*, 2015 Guam 16, ¶ 19 (Guam Apr. 29,

5   2015). "A contract exists if it is properly formed, meaning it must contain an "offer, acceptance,

6   and consideration." *Blas v. Cruz*, 2009 Guam 12, ¶ 18 (Guam Nov. 4, 2009) (citing 18 GUAM CODE

7   ANN. § 85102 (2005)). Fred had the burden of demonstrating that the "offer encompass[es] all

8   essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."

9   *Id.* (quoting *Mobil Oil Guam, Inc. v. Tendido,* 2004 Guam 7, ¶ 34 (Guam May 7, 2004)) and *see*

10  18 GUAM CODE ANN. § 85102.

11     Fred failed to provide evidence that proper consideration was given.[4] Rather, the words of

12  the contract and the testimony demonstrated that past consideration was made. "[C]onsideration

13  for a promise must be an act or a return promise, *bargained for and given in exchange for the*

14  *promise*."[5] *In re Ins. Installment Fee Cases*, 150 Cal. Rptr. 3d 618, 633 (Cal. Ct. App. 2012)

15

16  ─────────────────

17  [3] "'[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.'" *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2007) (quoting *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Here, Guam contract law applies.

18  [4] The court finds that the contract lacks consideration and, therefore, deems it unnecessary to discuss offer and acceptance elements of a contract.

19  [5] Consideration is defined under 18 GUAM CODE ANN. § 85502 as

20          [a]n existing legal obligation resting upon the promisor, or a moral obligation originating
            in some benefit conferred upon the promisor or prejudice suffered by the promisee, is also
21          a good consideration for a promise, to an extent corresponding with the extent of the
            obligation, but no further or otherwise.

22  The Civil Code of Guam was modeled after the California Civil Codes. *Wasson v. Berg*, 2007 Guam 16, ¶ 17 n.3
23  (Guam Dec. 3, 2007). Guam courts have held that when a Guam Civil Code is "rooted" in the California Civil Codes,
    "California case law construing the identical statute is persuasive." *Guam Fed. of Tchrs. ex rel. Rector v. Perez*, 2005
24  Guam 25, ¶ 23 (Guam Dec. 28, 2005). Section 1606 of the Guam Civil Code is referenced as the "[s]ource" for 18

1    (emphasis in original) (quoting *Simmons v. California Institute of Technology*, 209 P.2d 581, 585

2    (Cal. 1949)). However, "past consideration is not sufficient to support a contract." *Blonder v.*

3    *Gentile*, 309 P.2d 147, 150 (Cal. Ct. App. 1957).

4        Two cases similar to the case at bar discussing past consideration are *Passante* and

5    *Chaganti*. In *Passante,* a corporate attorney arranged a $100,000.00 loan for a company's business

6    venture. *Passante v. McWilliam*. 62 Cal. Rptr. 2d 298, 301 (Cal. Ct. App. 1997). After receiving

7    the funds, the company orally promised that they would give the attorney 3% of the corporate

8    stock. *Id.* The company never fulfilled their promise and the attorney sued. *Id*. The court held that

9    because the attorney had already arranged the loan when the 3% corporate stock was offered, there

10    was no new consideration given for the promise. *Id.* Instead, the court held that the attorney already

11    performed and, thus, the promise was not binding. *Id.* The court explained that the attorney's

12    performance was past consideration which "cannot support a contract" and held that a contract

13    needs more than a promise, consideration must be given in exchange for a promise. *Id.*

14        In *Chaganti v. I2 Phone Intern., Inc.*, a patent attorney assisted a company with its

15    marketing, engineering, and venture capital needs. 635 F. Supp. 2d 1065, 1068 (N.D. Cal. 2007),

16    *aff'd*, 313 Fed. Appx. 54 (9th Cir. 2009) (unpublished). When the patent attorney completed his

17    work, he asked the company for payment. *Id.* The company did not have the capital to pay and,

18    instead, offered the patent attorney 500,000 shares of stock in the company. *Id.* The company

19    subsequently retracted its promise to give the patent attorney 500,000 shares of stock. *Id.* at 1072.

20    The court held that the promise to give 500,000 shares to the patent attorney for the services already

21    performed was an unenforceable promise. *Id.* at 1073. The court explained that because the patent

22    attorney already performed when the promise for the 500,000 shares was made, the shares were

23

24    _____

GUAM CODE ANN. § 85502 and it is identical to Section 1606 of the California Civil Code. Thus, California case law looking at Section 1606 is persuasive.

1   not bargained for in exchange for the patent attorney's performance. *Id.* Instead, the court noted

2   that the promise was based on past consideration and past consideration is insufficient to enforce

3   a promise. *Id.*

4       Similar to *Passante* and *Chaganti*, Fred had arranged to pursue the probate case six months

5   before the contract with Peter was signed. In particular, Fred used his personal funds to hire a

6   probate lawyer, to travel to Guam, to pay secretarial costs, and other expenses. Fred and Mary both

7   testified that Fred began speaking with Peter in October 2015. Trial at 02/13/2024 and 02/14/2024.

8   Fred testified that Peter called to tell him about the Decedent's estate, how their sister was given

9   the entire estate in probate, and requested that Fred contest the probate matter because Peter lacked

10   the funds to challenge the probate. Trial at 02/14/2024. Fred testified that the parties discussed

11   how Fred would be compensated if the probate matter were to result in Peter receiving an

12   inheritance.[6] *Id.* Mary testified that she began contacting lawyers at Fred's direction regarding the

13   probate proceeding right after the parties' conversation on October 14, 2015. Trial at 02/13/2024.

14   The first pleading by the parties contesting probate was filed on May 2, 2016, and the contract at

15   issue was signed six months later, on November 30, 2016. Def.'s Ex. AA at 2 and Pl.'s Ex. 1.

16   Although the probate proceeding did not officially end until January 16, 2020, when the Decree of

---

[6] The court finds that there is not enough evidence to determine whether an oral contract was formed during Fred and Peters' initial conversations. A review of the evidence demonstrates that the essential contract terms were not sufficiently definite to create an oral contract. *Mack v. Davis*, 2013 Guam 13, ¶ 33 (Guam Aug. 8, 2013) (holding that in breach of oral contract cases, "definite terms are necessary to make the contract enforceable."). The "[e]ssential elements of a contract include an offer, acceptance, and consideration." *Blas*, 2009 Guam at ¶ 18 (quoting *See* 18 GCA § 85102 (2005)). The testimony presented at trial regarding Fred and Peters' initial conversations show that it is unclear whether Peter accepted Fred's offer to pursue the probate matter in exchange for compensating Fred. *Id.* at ¶ 19 (quoting *C.H. Leavell & Co. v. Grafe & Assocs., Inc.,* 414 P.2d 873, 878 (Idaho 1966) ("[a]n acceptance of an offer, in order to create a binding contract, must unqualifiedly and unequivocally agree to all the material terms of the offer and must not include any new conditions or provisions.")). Thus, there is not enough evidence to conclude that an oral contract was formed.

1  Final Distribution was issued, the evidence does not change the fact that Fred's performance of

2  pursuing and challenging the probate had already occurred before the written contract was signed

3  by Peter. *See* Def.'s Ex. C and Pl.'s Ex. 1. In sum, past consideration is not sufficient to support a

4  contract.

**B. Fred Is Entitled to Recover Under the Quasi-Contract Remedy**

6  Although the court finds that no contract exists, Peter still benefited from Fred expending

7  his own money to pursue the probate matter. Evidence at trial revealed Fred spent his money hiring

8  a lawyer, traveling to Guam, paying secretarial costs, and other expenses to pursue the local

9  probate case leading to the dispensation of the estate.

10  *Quantum meruit* enables a "plaintiff who performed services at the defendant's inducement

11  [to] recover for conferring a benefit to the defendant." *M Elec. Corp. v. Phil-Gets (Guam) Int'l*

12  *Trading Corp.*, 2020 Guam 23, ¶ 20 (Guam Dec. 21, 2020). *Quantum meruit* is comprised of two

13  theories: (1) contract implied in law, also known as quasi-contract, and (2) contract implied in fact.

14  Unlike an express or implied in fact contract, quasi contracts do not "rest upon the assent of the

15  contracting parties." *Tanaguchi-Ruth + Assocs. v. MDI Guam Corp.*, 2005 Guam 7, ¶ 26 (Guam

16  Apr. 1, 2005) (citation omitted). Instead, quasi-contracts are "obligations imposed by law on

17  grounds of justice and equity," and its purpose is to prevent unjust enrichment. *Id.* Although quasi-

18  contracts are not recognized by Guam statute, Guam courts have recognized it. *Id.* at ¶ 27.

19  The court considers three factors when determining whether a quasi-contract exists: "[(1)]

20  the performance of services by the plaintiff, [(2)] the receipt of the benefit of those services by the

21  defendant, and [(3)] the unjustness of the defendant's retention of that benefit without

22  compensating the plaintiff." *Id.* (quoting *Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.,* 907

23  F.2d 732, 737 (7th Cir. 1990)).

24

Under factor one of whether a quasi-contract exists, the court finds that Fred performed services to pursue the probate matter. At trial, Fred testified that he first spoke to his brother about the estate on October 13, 2015. Trial at 02/14/2024. According to Fred, Peter reached out and informed him that they were going to lose the Decedent's estate if someone did not contest it. *Id.* Fred testified that Peter told him he did not have the money to fight the probate matter and asked Fred to do so for them. *Id.* Mary testified that, at Fred's instruction, she began contacting Guam probate lawyers regarding the probate matter right away after the October 13, 2015 conversation. Trial at 02/13/2024. Mary further testified that she was the record keeper for Fred, she took notes, handled Fred's email correspondence, and kept both electronic and hard copies of important matters dealing with the probate case. *Id.* Mary further testified she received cash payments from Fred for her work, and Fred paid for Mary's travel expenses to Guam for the probate matter, including lodging. *Id.* All of these expenditures led to the filing of the probate lawsuit on May 2, 2016. Def.'s Ex. AA at 2. In sum, the court finds that pursuant to factor one, Fred indeed performed services.

Under factor two of whether a quasi-contract exists, the court finds that Peter benefitted because Fred pursued the probate matter at the request of Peter. In *Tanaguchi-Ruth*, the court explained that,

> a person performing at the request of another "should be paid by the person whose request induced the performance." In receiving requested performance, the law implies that the defendant received a "benefit" regardless of whether an actual benefit was received, and recovery under a quasi-contract theory should be permitted in such circumstances.

2005 Guam at ¶ 49 (Guam Apr. 1, 2005) (citation omitted). The court held in *Tanaguchi-Ruth* that plaintiff performed architectural services at the request of defendant and, therefore, defendant received a benefit from plaintiff. *Id.* at ¶ 51.

Here, like in *Tanaguchi-Ruth,* Fred pursued the legal services of a lawyer to contest a probate matter at Peter's request and, therefore, Peter received a benefit from Fred. Additionally, Peter actually benefitted from Fred's efforts. Without Fred's pursuit of obtaining legal services, Peter would not have received his share of his inheritance as detailed in footnote 2 of this order.

Under factor three of whether a quasi-contract exists, the court finds that Peter would be unjustly enriched if he were not required to compensate Fred for the services he provided to Peter. The court in *Tanaguchi-Ruth* held that it would be unjust for defendant to retain the benefit without compensating plaintiff because plaintiff anticipated being compensated "*at the time of the rendition*." 2005 Guam at ¶ 55 (emphasis in original) (quoting *Broughton v. Johnson,* 545 S.E.2d 370, 372 (Ga. Ct. App. 2001)). The court held that the record supported a finding that plaintiff expected to be compensated for its work. *Id.* at ¶ 57.

Here, the evidence shows that Fred expected to be compensated for pursuing the probate matter if the probate were to result in the parties receiving their inheritance. There are three instances that show Fred expected to be compensated. First, Fred testified that in his initial conversation with Peter, the parties spoke about "if [Fred] was going to fight [the probate matter] because [Peter] had no money [and] how we were going to set it up and how we were going to do it." Trial at 02/14/2024. Fred testified that the parties went back and forth with numbers and percentages. *Id.* He stated that Peter was "very excited" about the condition that he would not have to pay Fred if they lost the probate matter. *Id.* It is clear from Fred's testimony that at the time of the parties' initial conversation, in October 2015, Fred expected to be paid by Peter if the probate matter resulted in the parties receiving their inheritance. Second, the words of the contract further show that there was an expectation of payment. The contract states this "fee is freely given to compensate Fred for the legal fees, travel expenses, secretarial costs and other expenses which he paid out of pocket in order to pursue the court case leading to the dispensation of the estate. . . ."

Pl.'s Ex. 1. Third, there was evidence presented at trial of an email sent by Fred to Peter discussing payments to lawyers and Fred's additional fees. Def.'s Ex. I.

The court finds that factor three is met and that Peter would be unjustly enriched if he were not required to compensate Fred for the pursuit of the legal services in the probate matter.

**VI. Conclusion**

For the foregoing reasons, the court finds that no contract exists here. The words of the contract and the trial testimony demonstrate that Fred failed to prove an essential element of his breach of contract claim, that is, the existence of a valid contract. *Price*, 818 F. Supp. at 1323. In particular, Fred failed to provide evidence that proper consideration was given. Instead, past consideration was shown, and past consideration is no consideration. However, the court finds that Fred is entitled to recovery under the equitable remedy of quasi-contract. As such, the Motion for Judgment on Partial Findings Pursuant to Federal Rule of Civil Procedure 52(c) is **GRANTED**, and the court dismisses Fred's claim for breach of contract.

The court, however, finds that Fred is entitled to some recovery under the equitable remedy of quasi-contract. At trial, Fred did not offer proof of the out-of-pocket expenses he had already incurred to pursue the probate matter in the Superior Court of Guam. Thus, the court must determine the amount of recovery Fred is entitled to under the equitable remedy of quasi-contract. To determine the amount of damages warranted under the equitable remedy of quasi contract, "[t]here is no standard formula to measure it." *Meister v. Mensinger*, 178 Cal. Rptr. 3d 604, 619–20 (Cal. Ct. App. 2014) (quoting *Ajaxo Inc. v. E\*Trade Financial Corp.*, 115 Cal.Rptr.3d 168, 167 (Cal. Ct. App. 2010)). In the case where the benefit to defendant cannot be precisely measured, recovery is still warranted, and the requirement is a reasonable basis for the computation of the recovery. *Id.* An evidentiary hearing is necessary to determine Fred's recovery for expenditures.

Accordingly, the court hereby sets an evidentiary hearing on June 24, 2024, at 9:30 a.m.

Fred shall file a brief, itemizing the expenses he incurred when he pursued the probate case. Fred shall also file or lodge with the court documents supporting these expenses, including receipts, contract with the lawyer he hired, invoices, and any other supporting papers. The brief and supporting documents shall be filed no later than June 10, 2024. Peter may file a response to Fred's brief no later than June 17, 2024.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: May 20, 2024**